### J. M. SULLIVAN AND OTHERS V. T. P. DIMMITT AND OTHERS.

1. The record in one county of a deed to land lying in another county is not such a record as can be used as evidence of title, nor such as would authorize the use of a copy thereof for the same purpose.

2. There was no law of this State in 1853 which authorized or permitted the registration of deeds in the clerk's office of the district courts, and therefore a copy of a deed transcribed from the records of a district court could not (unless as part of a judgment) be read in evidence.

3. The right to perpetuate the testimony of witnesses by an examination before an officer duly authorized, was recognized and established by the civil law many centuries ago, and was the law of Mexico, and of Texas as part of Mexico, previous to the revolution.

4. That a *bona fide* verbal or parol sale of land in Texas, made in 1834, conveyed a good title, has been too often decided to be now questioned.

5. Respecting verbal sales of land, the general rule of the civil law required that delivery of the possession must accompany the sale, as evidence of ownership and to prevent fraud; but this rule assumed that the seller was in the actual possession of the property at the time of the sale, and it was not applicable to wild lands held by title only and without actual possession, as were most of the lands in Texas in 1834.

6. The rule, as deduced from the best civil law authorities, is, that when the seller holds actual possession of the property to be sold, he must deliver possession to the purchaser at the time of the sale; and when he does not hold actual possession, he must authorize and empower the purchaser to take possession at his pleasure.

7. *Held*, therefore, that a verbal sale of wild and unoccupied land in Texas, in 1834, might be a good and valid sale, notwithstanding that no actual delivery of possession either accompanied or followed the sale.

APPEAL from Karnes. Tried below before the Hon. J. B. Hurd.

This action was trespass to try title to two leagues of land situated on the east side of the San Antonio river, and now in the county of Karnes, which had been granted to Victoriano Zepeda by the Mexican government. The plaintiffs were the heirs of

Philip Dimmitt, deceased. James M. Sullivan and others were the original defendants, but the executrix of Ramon Musquiz appeared in the character of their landlord, and defended the suit, alleging title in her testator, and pleading the several statutes of limitation.

T. T. Teel and J. A. Cocke intervened as plaintiffs, claiming to be joint tenants and owners with the original plaintiffs, to the extent of one-fourth of the land.

This appeal was taken by the defendants, on grounds indicated in the opinion of the court. The proceeding before the judge of the first instance, for the purpose of perpetuating testimony of the verbal sale by Zepeda to Musquiz, appears in the record by bill of exceptions reserved by the defendants, as follows:

"In Karnes county District Court. No. —. —Dimmitt *et als.* v. Sullivan *et als.*—Be it remembered, that on the trial of this cause defendant offered to read in evidence, in support of her title, after proving the signatures of the names of the parties therein named to be their genuine signatures, and that they were all men of high standing in the country in their day, and occupying the offices and positions therein declared, and that they are now all dead, document marked·' Y,' and filed in the cause, as follows, to-wit:

"3. Seal twenty-five cents. In use in the States of Coahuila and Texas, and for the year ending 1835. (Signed) Navarro. No. 7. (Signed) Flores.

" *To the Judge of the First Instance of this city*—Sir : The citizen, Ramon Musquiz, a resident of this town, appears before your honor and says that it is necessary, for his interest, to have an authentic security of the sale of two ' *sitios* ' of land, made to him by Don Victoriano Zepeda, deceased, under the conditions that the payment for the title of possession, and to the government of the value assessed, according to the classification of the land by the respective commissioner should be at my expense, as also all the charges and obligations established by the colonization laws,

with regard to the title, and pursuant to the requirements of the last article of the law of March, 1834.

" Considering that this contract was not extended on a public instrument, for the reason that when we were about to execute it we were surprised at the invasion of the cholera morbus epidemic at the town of Goliad and this city, of which epidemic Zepeda fell a victim. I regret that it being indispensable to obtain an authentic document that may make faith in all time of the lawful acquisition of said two leagues of land. I request your honor be pleased to cause to appear before your court residents of your municipality, citizens Ignacio Arocha, Jose Maria Salinas and Ignacio Herrera, to whom you will propound under oath the following interrogatories :

" 1. If they know that Don Victoriano Zepeda obtained as a settler a concession of two ' sitios ' of land from the supreme government of this State.

" If within their knowledge said ' sitios ' have been alienated, and if the amount for which they were sold was paid over and satisfied, stating the person of whom they obtained that information, as likewise who was the purchasing party.

" These declarations taken, I hope your honor will certify at their bottom, as to the known veracity of the declarants, and give your opinion upon the validity of the sale, grounded on the results of the said declarations, which proceedings being concluded, I beg they be delivered to me in original for the above expressed ends.

" I protest that I do not act through malice, etc.

RAMON MUSQUIZ.

" Bexar, September 2, 1835."

" Court of first instance of Bexar, December 30, 1835.— Whereas, the citizens Ignacio Herrera and Jose Maria Salinas, named in the foregoing petition, were absent, I have decided that this petition shall be delivered to the judge who is to enter into

office to-morrow, for such ends as expressed by the interested party, and for due authenticity, I signed these presents with my attesting witnesses.

"To this I certify.    LUCIANO NAVARRO.

"Assistant witness Alexandro de la Garza; assistant witness Ignacio Arocha."

"In the city of Bexar, the second day of the month of January, 1836.—I, the citizen Francisco Bustillo, judge of the first instance, by virtue of the law, caused to appear the citizen Jose Maria Salinas, referred to in the foregoing representation by the acting party, and he being present, I received his oath in due form, upon which he offered to tell the truth, and whatever he knew and may be questioned upon. Asked to state his name, residence and profession. Said that his name is as above written; over thirty years of age, native and resident of this city; his profession, merchant.

"Question—If it is certain or if he knows that the supreme government of the State did concede to the citizen, Victoriano Zepeda, two 'sitios' of land, in the capacity of settler?

"Answer—Know that the person alluded to in the question received in concession from the supreme government, in the capacity of settler, the two 'sitios' of land referred to.

"Question—If he knows that said Zepeda alienated his action on the two said 'sitios' to any person, and if so to state to whom, for what consideration; if he received the value thereof according to the contract; if he knows it personally, or heard it of another, and of whom?

"Answer—Does not recollect the amount for which said Zepeda sold the two 'sitios,' but that he (Zepeda) informed witness that he had sold them to the citizen, Ramon Musquiz, and had already received the value thereof; that such is what he has to state on the subject matter, the same being the truth, upon his oath, and

signed the presents with me and my assisting witnesses.   To
which I certify.                       " FRANCISCO X. BUSTILLO.
" Jose Maria Salinas; assistant witness Ambrosio Rodriguez;
　　assistant witness Vicente Garza."

" In said city, on the seventh day of January, A. D. 1836, I
caused to appear the citizen, Ignacio Herrera, in order to take his
declaration, as witness cited by the acting party, and he being per-
sonally present, I took his oath in due form, upon which he pro-
mised to tell the truth upon whatever he knew and might be ques-
tioned upon.   Asked to state his name, age, residence and profes-
sion.   Said his name to be as above written; over thirty-five
years of age, a resident of this city, and his profession, merchant.

" Question—If he knows that Victoriano Zepeda received, in
the capacity of settler, concession of two ' sitios ' of land from
the supreme government of the State.

" Answer—Is certain that the person referred to in the ques-
tion received a concession of two ' sitios ' of land, as the same
Zepeda declared to the witness.

" Question—If he knows that said Zepeda did alienate the
aforementioned concession; if he was satisfied with, or paid for,
the amount for which he sold it, and if so to whom it was sold,
and how the transaction arrived to his knowledge?

" Answer—That from said Zepeda's own mouth he knew that
said concession was sold to the citizen Ramon Musquiz, for twenty
dollars, which he (Zepeda) said to have received, and that for the
reason that said land cost him little, as well as for the motive that
said Senor Musquiz had contributed to his obtaining it, and also
owing to the wants of his numerous family, he had been induced
to sell said land for the above expressed price.   Such is what he
knows and has to say on the subject matter, the same being the
truth upon his oath.   And this declaration having been read over
to him, he said it was identical to the one made by him, and he
was not within the purview of law with regard to the interested

party, and signed the presents with me, the present judge, and assisting witnesses. To which I certify.

                 "Francisco X. Bustillo.

"Ignacio Herrera; assistant witness Miguel Aruñoega; assistant witness Manuel Perez."

" On the above written month and year, I, the aforesaid judge, caused to appear before me the citizen, Ignacio Arocha, a witness cited by the acting party, to take his declaration. He being personally present, I took his oath in due form, upon which he promised to tell the truth on whatever he knew and might be questioned upon. Question : age, residence and profession, answered his name to be as above written; thirty-three years of age; acting secretary of the corporation of this city ; native and resident of said city.

" Question—If he knows that D. Victoriano Zepeda, deceased, received a concession from the government of two 'sitios' of land, in the capacity of settler; that he sold said concession; and if so, to whom; and if he received the amount for which he sold it ?

"Answer—Is certain that Victoriano Zepeda received a concession of two 'sitios' in the capacity of settler, and that Zepeda himself informed witness—with whom he was in intimate friendship—that he had sold his right to said concession to Don Ramon Musquiz; but does not know whether he gave to him any document, since a short time after having sold the same, the cholera began to rage in this city, of which Zepeda died. D. Ramon being absent at the time, heard that he did not give him any document. Such is what he can state on the question propounded to him, the same being the truth upon his oath, stating further that he is not in the purview of law, and signed these presents with me, the aforesaid judge, and assisting witnesses. To which I certify.               "Francisco X. Bustillo.

"Assistant witness Vicente Garza; Assistant witness Ambrozio Rodriguez."

" Immediately after, I, the aforesaid judge, having finished taking the declarations applied for by the interested party, delivered the same to him in original, for such ends as convenient to his rights. I, the citizen Francisco Xavier Bustillo, judge of first instance, by virtue of the law, have thus decided, ordered, and signed, with my assisting witnesses. To which I certify.

"FRANCISCO X. BUSTILLO.

"Assistant witness Vicente Garza; assistant witness Antonio Rodriguez."

" To the introduction of which plaintiffs and intervenors objected, for the reason that it was not an official act known to the law, which objections were sustained by the court, when defendants offered to prove to the court that a record of the proceedings and judicial acts was kept in the records of the judge of the first instance, in the city of San Antonio, which proof was objected to, and objection sustained by the court, and the document excluded; when defendant offered to read it in evidence as an ancient document of more than thirty years, and coming from the party who should have it in possession. To the introduction of which plaintiffs still objected, which objections were sustained by the court, and the document excluded by the court. Defendant, by counsel, excepts to the rulings of the court, and here tenders (this) her bill of exceptions, which she prays may be signed and sealed by the court, and made part of the record.

"J. B. HURD,
" Judge Fourteenth Judicial District."

In the brief filed for appellees, the exclusion of this document is justified on the ground that it does not appear that any notice to Zepeda's heirs was given of the taking of the testimony. But no light is thrown by the briefs on either side upon the rules of practice under the civil law, respecting such proceedings.

*S. G. Newton*, for the appellants.

*L. S. Lawhon,* for the appellees.

OGDEN, J.—An action of trespass to try title to two leagues of land was instituted by the appellees in 1867, against the appellants, and it appears from the pleadings and evidence in the cause that both parties claim title from the same common ancestor. The plaintiffs below allege in their petition that the defendants, in 1866, entered upon and took possession of said tract of land, committing sundry trespasses and wrongs, to the great damage of petitioners, and make the usual prayer for title, possession and damages, etc. As both plaintiffs and defendants claim title from and under one Victoriano Zepeda, the question for judicial determination is in whom the title and right of possession lies; and in determining that question we must be governed by the lights of former decisions on questions analogous in form and character. It is a well settled principle that a plaintiff who would recover against a defendant in possession must do so, if he recover at all, on the strength of his own title, and not on the weakness of his adversary's; and therefore, in this cause, unless the plaintiffs below have established a good and valid title in themselves, they cannot recover as against the defendants, though they hold a mere naked possession. On the trial of this cause the plaintiffs offered in evidence a certified copy of a deed to the land in controversy, from the records of Bexar county—to the introduction of which the defendants objected, because the certificate showed that the land was situated in Goliad county, and that this was a copy from the records of Bexar county. The objection was overruled, and the copy read to the jury. We think this was in violation of articles 4988 and 3716, Paschal's Digest. The record in Bexar of title to lands in Goliad is not such a record as the law provides may be used as evidence of title, nor such a record as would authorize the use of a copy for the same purpose. It is suggested by counsel, that at the time the deed was recorded in Bexar, the county of

Goliad was not organized, and that no record could have been made in that county. Perhaps proof of that fact might have excused the want of a compliance with the law, while the county of Goliad was unorganized. But the county of Goliad had been organized over twenty years when that paper was offered in evidence, and there was no excuse for offering the copy from the records of a distant county.

But we can discover no objection to the introduction of the certified copy from the records of Goliad county, of the same instrument. It was duly proven up by one of the subscribing witnesses, in compliance with the law then in force, and was duly recorded. The objection to the introduction in evidence of the transcript from the district court, of a deed there recorded in 1853, was well taken, and should have been sustained by the court. There was no law in 1853 requiring or permitting the registration of deeds in the district court clerk's office, and therefore no copy could be used as evidence, excepting as a transcript of a judgment of that court under certain circumstances, which did not exist in this case.

There was no objection to the intervention of Teel & Cocke, nor to the introduction of the testimony offered by them. Upon this testimony the plaintiffs and intervenors obtained a judgment for the entire two leagues of land, with the exception of four hundred acres, which were adjudged to the appellant. We think there was error in this judgment, sufficient to warrant a reversal, without regard to the claim of the defendant, or the evidence introduced by him on the trial. The plaintiffs should have recovered the whole, or less than they did. How much land the deed from the records of Goliad county conveyed, if indeed it conveyed any, need not now be inquired into, as, in our opinion, the title set up by the defendants, and proven on the trial, must settle the question of title. The defendants proved by two witnesses that Victoriano Zepeda, the original grantee of the land, made, or at-

tempted to make, a verbal transfer of the land in March, 1834, to one Ramon Musquiz. Defendants also offered in evidence the sworn statements of three other witnesses, taken before the judge of the first instance, of the city of San Antonio, in 1835, soon after the death of Zepeda, in relation to the sale of the land to Musquiz. These statements were ruled out by the court as not legitimate testimony to go to the jury; to which ruling defendants excepted.

The right to take the examination of witnesses before an officer authorized for that purpose, with the view of perpetuating their testimony, was fully recognized and established by the civil law many centuries ago (Domat, Civ. L., 2036); and is still recognized in the English chancery courts as a practice admissible, and indeed, under certain circumstances, absolutely necessary for the protection and maintenance of the rights of parties. This practice is adopted in nearly, if not quite, every State in the Union (Story's Eq. Juris., 1505), including the State of Texas (Pas. Dig., 3734), and is and was the law of Mexico at the time of taking the testimony in 1835. The court therefore erred in excluding the testimony of the three witnesses, whose examination was had before the judge of the first instance, in the city of San Antonio.

That a *bona fide* verbal or parol sale of land, made in 1834, was sufficient to convey a good and indefeasible title, has been too often judicially decided in the affirmative, in the States and countries governed by the civil law, to be now questioned, and we need now only refer to the decisions of our own court for authority to reiterate the same doctrine. (Scott & Solomon v. Maynard and wife, Dallam, 548; Briscoe v. Bronaugh, 1 Texas, 326; and Monroe v. Searcy, 20 Texas, 348.) And the same doctrine is held in Louisiana in the case of Gonzales, *et al.*, v. Sanchez and wife, 4 Martin, N. S., 657.

The only question in regard to a verbal sale, as raised by the

records in this case, is as to the want of delivery of possession at the time of sale. The weight of authority, in countries where the civil law obtains, is that possession must accompany the sale; not that the delivery of possession is a part of the sale, but because in such cases possession is the only visible evidence of ownership, and if such sales of real estate were generally recognized without requiring the possession to accompany the sale, there would be but little protection against fraud and imposition. Besides, the authorities which require a delivery of possession, in order to perfect a verbal sale, maintain that doctrine upon the hypothesis that the owner is in possession of the property at the time of the sale, and that the transfer could not be perfected until a transfer or delivery of possession. But in this country, at the date of the sale from Zepeda to Musquiz, when most of the lands were wild and held, not by possession, but by title only, and when a large proportion of the owners of the soil never saw the lands for which they held a grant, it might be difficult to deliver actual possession, or to determine what acts would constitute a delivery. A true construction of the law requiring a delivery of possession to accompany the sale of real estate, as established by the best civil law writers, is that where the seller has possession of the property he would sell, he must deliver up possession to the purchaser, at the time of the sale; and when he does not hold possession, he must authorize and empower the purchaser to take possession at his pleasure.

Domat, in describing what is necessary to constitute a delivery of immovables, says, among other things, "that possession is delivered by the seller carrying the buyer upon the place (or property sold), or by only showing him at a distance, or by consenting that he take possession." (1 Domat, 272). Mackeldry, in discussing the same subject, says: "The object of delivery is, to convey to the receiver dominion over the thing; that is, to enable him to exercise judicial power over the thing, by affording him the physical power over it. Hence it follows that the delivery must

be considered as complete, as soon as the receiver is enabled to ex-
ercise physical power over the thing." In the case of Monroe v.
Scarcy, 20 Texas, 350, Chief Justice Hemphill held that where
a verbal sale of land was made in 1834, and the purchaser did not
take possession until 1838, the sale was valid and binding. We
are therefore of the opinion that a verbal sale of wild and unoccu-
pied land in Texas, in the year 1834, might be a good and valid
sale, notwithstanding no actual delivery of possession accompanied
or followed the sale. We are therefore of the opinion that the
court erred in its instructions to the jury, in restricting it to the
consideration of a verbal sale which was accompanied by delivery
of possession. We are also of the opinion that the verdict of the
jury was not supported by the evidence. The judgment is there-
fore reversed and the cause remanded.

Reversed and remanded.