Wheeler, J.
This was an action brought by the appellant to recover of the appellee the possession of a lot with its improvements, in the city of Houston.
*(234) A verdict and judgment thereon having been given for the defendant, the plaintiff appealed, and now contends that the verdict was contrary to law and the evidence in the case, and that the judgment should therefore be reversed.
The history of the derivation of title, as disclosed by the record, appears to be that the original proprietors, the Houston Town Company, sold the premises to one Woodruff, who sold to the present defendant by parol sale and put him in possession; that the defendant, in the spring or summer of 1838, sold to one George C. Briscoe, then in possession as his tenant; that one thousand dollars of the price remained unpaid to the defendant; and that the title was made by Woodruff to George C.. Briscoe.
The plaintiff claimed by purchase under a deed of trust from George 0. Briscoe, bearing date the 2d day of May, 1839.
From the statement of facts’it apears that the defendant’s vendee, George C. Briscoe, refused to pay him the $1,000 of the purchase money for which he (Bronaugh) brought suit at the fall term, 1838, of the Harris district court, and at the spring term following, obtained judgment. This judgment bears date on the 16th day of May, 1839. The property now in controversy was levied on and sold under an execution issued upon this judgment in September, 1839, and the defendant, Bronaugh, became the purchaser. ’
The deed of trust under which the plaintiff claims purports to convey that part of the premises now in controversy to one Harris, who is appointed by the deed trustee with power to sell upon a certain contingency specified in the deed, after having given ten days’ notice. It recites among other matters that the grantor, Briscoe, “has this day given to Andrew Briscoe a promissory note for the sum of- $422,” and provides that the proceeds of the sale when made by the trustee shall be applied to the payment of this note. The contingency mentioned in the deed having happened, the trustee proceeded, on the 26th day of May, 1840 (having given the required ten days’ notice), to sell the premises according to the terms of the deed; and the present plaintiff, Andrew Briscoe, became the purchaser for the consideration of two hundred and seventy-five dollars.
It further appears that the plaintiff, Andrew Briscoe, acted as agent for George G. Briscoe in the absence of the latter the fall and winter of 1838, and that as such agent he claimed for him the continuance of a cause in which he was defendant at the fall term, 1838, of the 'Harris district court; at which court also the cause of the present defendant against the said George G. Briscoe for the one thousand dollars of purchase money was pending and continued.
*(235) During the pendency of the present suit Mrs. Sarah A. Bronaugh, wife of the defendant, intervened, claiming the premises in litigation as her own separate property. But as in our opinion her evidences of title were properly rejected by the court, we have dismissed them from our consideration.
The defense set up by the answer is, that the defendant was creditor of the plaintiff’s vendor, G-eorge 0. Briscoe, for a part of the price at which the latter had purchased the premises; and that he (the defendant) had a lien therefor upon the premises subsisting when the plaintiff’s title had its origin. That the plaintiff purchased with notice of the defendant’s lien and with the intent to defraud and deprive him of his rights accruing in consequence of said debt and lien; and that the defendant having had his debt for the purchase money ripened into a judgment against the said George 0. Briscoe, and having purchased the premises at sheriff’s sale in satisfaction of this judgment, his is the better right and title to the premises.
To reverse the judgment, it is insisted for the plaintiff:
That he is entitled to recover the premises by virtue of his elder legal title.
That the defendant had no lien upon the property, or if he had, that there is no evidence to charge the plaintiff with notice actual or constructive, or with any intent to defraud the defendant; and that his vendor, George 0. Briscoe, in making him beneficiary in tire deed of trust had but exercised his legal right of preferring one creditor to another.
It will be conceded that the plaintiff cannot recover upon the weakness or want of title in his adversary; and that before he can dispossess the defendant he must show in himself a valid legal title. But as his is the elder legal title, it must prevail unless overborne by some prior equity in the defendant, or tainted with fraud; and in reference to its sufficiency and validity in these respects, it becomes material to inquire:
1st. Had the defendant at the period of the plaintiff’s acquisition of title a lien upon the premises?
2d. Is the plaintiff’s title affected with notice of this prior equity? or,
3d. Is it affected with fraud?
The respective claims of the parties had their origin in facts which transpired before the common law became the rule of décision in this country; and when the law of Spain (or the civil law as in force in that country and Mexico) was the law of the land, except so far as modified by our own legislation.
*(236) 1st. That “ a vendor has a privilege (lien) over the thing sold, that is to say, the right of requiring the sale of it in order to obtain his payment ” is a doctrine recognized by the courts of Louisiana as existing in the laws of Spain. 2 Mart. 209. And we are told by distinguished jurists that the doctrine of the vendor’s lien for his purchase money, as recognized in the equity jurisprudence of England and the United States, was derived from the civil law. 4 Kent, 152, 153, note (d.); 2 Story Eq. 642. “There is,” it has been said, “ a natural equity that the land should stand charged with so much of the purchase money as was not paid, and that without any special agreement for that purpose.” Vern. 267; 4 Kent, 152. It is founded upon an implied trust between the vendor and purchaser. The latter is regarded as the trustee of his vendor, receiving the* contract or conveyance, to hold it for the use of the vendor until the purchase money is paid. The trust attaches to the land and follows it into the hands of a subsequent purchaser with notice, upon the universally received doctrine that he who purchases a trust property with notice of the trust is bound by it. This equitable mortgage exists in every case of sale where the money is not paid, unless it be otherwise agreed by the parties either expressly or by acts showing that the lien was not intended to be retained. Ohio Cond. 407. Prima facie the lien exists and it lies on the purchaser .to show that the vendor agreed to waive it. 1 Ham. 318; 4 Kent, 152; 2 Phil. Dig. 711, sec. 207; 2 Story Eq. 638; 1 Johns. Ch. 308.
This is the well settled doctrine of the English courts. It is recognized by both the common and the civil law. It has been asserted and maintained almost universally throughout the United States; and may now be regarded as settled upon too firm a basis of judicial authority to be successfully questioned.
But it is contended that the legal title to the lot was never in the defendant, and that therefore he never had a lien upon it for the purchase money. This point was raised but not positively decided in the case of Bayley v. Greenleaf, 7 Wheat. 46. Some difference of opinion existed in the court upon that question. But it will be remembered that the court were there deciding under the same provision of positive law, which is embraced in the statute of frauds of 29 Charles II. and which declares that no person shall be charged upon any contract or sale of lands, or any interest in or concerning them, unless the agreement or some memorandum or note thereof was in a writing and signed by the party to be charged therewith. 4 Kent, Com. 450. No such principle existed in the lajvs of this country at the time of the purchase and sale by the defendant; but, on the eon- *(237) trary, a parol sale accompanied by possession passed a title as valid and legal as a written conveyance.
The objection is therefore without foundation in the present case. The rule of law which created the doubt in Bayley v. Greenleaf was unknown here until the adoption of the statutes of frauds of 18th January, 1840, and in the absence of the rule requiring a writing, signed by the party or by his authority in order to pass an interest in lands, it is not perceived that the want of such writing, where there has been a valid sale, by wdiich the entire interest and right have passed and vested in the purchaser, can at all affect the right of the vendor, to retain a lien upon the land to secure the payment of the purchase money.
The other objection urged to the existence of a lien in the present instance, supposed to arise from a want of compliance by the vendor with the law concerning the registration of deeds (1 Laws Texas, 155) seems equally untenable. The statute to which reference' is made clearly contemplates the recording only of “ instruments of writing ” giving title or “ color of title ” to, or a lien upon lands. It is not intended to embrace any equitable lien not evidenced by writing; nor by requiring an impossibility to be performed, to destroy an existing right indirectly and by implication. In Miller v. Mercier, 3 Mart. (N. S.) 233, it was said that “ tacit liens resulting from acts done and not from contracts reduced to writing were not embraced by the provision of the law (concerning registration) because, among other reasons, it was impossible such acts could be recorded.”
We think the defendant in the case before us had alien upon the lot now in controversy for the unpaid purchase mone}»-, subsisting as between him and his vendee, George C. Briscoe, from the sale to the latter in 1838, until the purchase by the former at sheriff’s sale in 1840; and that it was in no degree impaired or affected by the absence of a conveyance in writing or the want of registration.
2. Is the plaintiff’s title affected with notice of this lien?
The effect of bringing home to the plaintiff notice of the defendant’s lien would be, that the former can derive no benefit from his legal title, as against the latter. A purchaser with notice of a lien takes the estate, if at all, subject to the prior equity, and cannot set up his title against the person holding it, until he has first paid off and discharged the incumbrance. The notice is said to raise a trust in him to the amount of the lien. And if (as in the present case) the purchaser resists, and seeks to overcome the claims of the party having the prior equity, and it be made to appear that he purchased with *(238) notice, lie will be held a trustee for the benefit of the party whose rights he has thus sought to defraud and defeat. 2 Sug. Yend. 279.
The ground of the doctrine is stated by Lord Hardwieke to be that, “ The taking of a legal estate after notice of a prior right makes a person a mala fide purchaser; and not that he is not a purchaser, for a valuable consideration, in every other respect. This is a species of fraud, or dolus malms itself.” 3 Atk. 646.
What shall constitute notice, says Mr. Justice Story, in cases of subsequent purchasers, is a point of some nicety and resolves itself sometimes into matter of fact and sometimes into matter of law. Story Eq. 400. It is perhaps impossible to lay down definite rules as to what facts shall be deemed proof of constructive notice in every case, “for it must depend upon the infinitely varied circumstances of each case.” 4 Kent, 179. It is a general rule that whatever is sufficient to put a party upon inquiry amounts in judgments of law to notice; for “ constructive notice is no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted.” 2 Sug. Vend. 278. It is upon this ground that every man is presumed to know.ywhat passes in the courts of justice of the government in which he resides; and therefore a purchase of property actually in litigation, though for a valuable consideration, and without any notice in point of fact, affects the purchaser in the same manner as if he had such notice. This principle is sought to be applied in the case before us; and it is insisted by the defendant that the plaintiff purchased Us pendens, and consequently is affected with constructive .notice.' That the purchaser of the subject-matter of a suit pendente lite acquires no interest as against the title, whether legal or equitable, of the plaintiff in that suit, is well settled. Such sale as against the plaintiff is considered a nullity. The decree of the court binds the property in the hands of such purchaser, although he is no party to the suit, and had in fact no notice of the suit' or the claim of the plaintiff; and although he paid for the property its full value. He is charged with constructive notice of the pendency of such suit, so as to render the interest he. might have acquired by his purchase, in the subject of it, liable to abide its event. 3 Ham. (Ohio) 541. And had the suit in question been prosecuted for the purpose of enforcing the lien, and in the manner proper for attaining that object, making the premises purchased directly the subject of litigation in the suit, there would have been such a Us pendens as to charge the appellant with notice of the lien. But it is justly contended by the appellant that such was not the case. *(239) The petition in the suit for the purchase money is not before us; but the judgment, as presented in the record, merely establishes the amount of indebtedness and changes its character from a simple contract debt to a debt of record. Had the object of the suit been directly to establish and enforce the lien, it is evident that it failed to attain that object, and the inference would be unfavorable to the appellee. But we are satisfied that such was not its object; and though the lien still subsisted, it was not asserted in that action; nor does there appear to have been anything in the proceeding to charge the appellant with constructive notice.
But although there may be in the case no evidence to charge the plaintiff with constructive notice of the lien, yet, under the issue presented, the question of actual notice was a proper one for the jury, and one which must have been considered by them. The answer charged the plaintiff with fraud. That issue was found for the defendant, and the question of notice was necessarily involved in that finding, for the plaintiff could not have intended a fraud upon a party of whose rights he was ignorant.
The circumstances mainly relied on as proof of actual notice are, the relative situation as principal and agent of the plaintiff and his vendor, Geo. C. Briscoe; that the former, as such agent, attended the term of the district court when the suit of the appellee for his purchase money was pending against his principal, and procured the continuance of a cause in which his principal was defendant; that the suit and its subject-matter were within the scope, and peculiarly the subject of his cognizance and authority as agent; and his means of knowing the facts of the appellee’s demand, in consequence of the business confided and confidence reposed in him by his principal, the party most materially interested and affected by the facts, and the suit upon them then pending.
If he had a knowledge of these facts, i. e. the indebtedness of his principal and the origin of that indebtedness, he had notice of their legal consequence, which was the lien of the defendant upon the premises} and his title is thereby affected.
The questions in the present case of actual notice and fraud being so intimately connected and dependent, one upon the other, and both upon the same evidence and involved in the same issue and verdict, may be considered together under the remaining inquiry.
3. Is the plaintiff’s title affected with fraud?
There was.no direct and positive evidence of notice or of any intent on the part of the appellant to defraud the appellee, but there were facts and circumstances proven conducing to charge the plaintiff with *(240) notice and fraud, and whether they were sufficient to justify the verdict is now the subject of inquiry.
Although fraud, it is said, will not be presumed, but must be proved, yet it may be proved by circumstantial or presumptive evidence. Ohio Cond. 128; 8 Pet. 244; 1 Story Eq. 206, 207.
The circumstances relied on to charge notice and fraud upon the appellant (in addition to those already mentioned as arising from the peculiar and confidential relation of principal and agent existing between the parties' — -the scope and object of the agency — the business actually transacted by the agent and the opportunity of time and place and means afforded him of obtaining a knowledge of the facts) are, the date and contents of the deed of trust; the consideration paid by the plaintiff at the sale by the trustee; the omission to show upon what consideration the trust deed was executed; or that any consideration whatever passed, or any previous indebtedness had existed between the beneficiary in that deed and the other parties to it; and the total absence of any proof tending to explain the transaction and show it to have been fair and Iona fide,— though it had been especially challenged for fraud.
The purchase was made pending the writ, and upon the eve of the judgment recovered by the appellant for the purchase money; and this, according to Twyne’s case, 3 Coke, 80, was a “ sign and mark” of fraud; and, according to Gilmore v. The N. A. Land Co. Pet. C. C. 460, “ a fraudulent intent will in general be presumed from the fact that the party conveying was indebted at the time when the conveyance was executed.”
If any consideration passed from the plaintiff to his vendor, or there existed any previous indebtedness, these facts were susceptible of easy proof; aud the plaintiff was fully apprised of the necessity of being prepared with such proof, by the charge of fraud expressly made in the answer. Yet he is content to suffer the transaction out of which the deed of trust arose, to remain wholly without explanation, by any evidence extrinsic of the deed itself. He has direct and explicit notice of the charge he will be called upon to meet and repel; facts are proved which cast suspicion upon his titles and throw upon him the burden of proof, yet he makes no attempt to explain the transaction or to repel the presumptions arising against him. He exhibits his mere naked, legal title and rests on that alone, though called upon to answer to a prior equity, in respect to which that legal title is impeached as having had its inception and consummation in fraud.
If, as has been contended for him, his title had its origin in the *(241) right of his vendor to prefer one creditor to another, it devolved on him to establish, by evidence other than his deed of trust (for its validity and the verity of its contents were the very points in question) that he was a bona fide creditor. This he not only has omitted to do, but has left the jury at liberty to draw an inference unfavorable to his having been a creditor, from the fact that he produces no other evidence of indebtedness than a mere recital in the deed of a note, as having been then given him by his vendor, for the payment of $422; and also unfavorable to the solvency of his vendor, from the fact that the latter had suffered that part of the lot embraced in the deed of trust (being the property in controversy, and which, for aught that appears, may have included the principal part in value of the premises which a short time before had been sold for twelve hundred dollars, and which he had more recently purchased at an advance upon that sum of one thousand dollars), to be sold for two hundred and seventy-five dollars.
Inadequacy of price, sq gross, naturally leads to the presumption of fraud, of the description alluded to by Lord Ilardwiclce, when he said: “Fraud may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under a delusion would make, on the one hand, and no honest and fair man would accept, on the other.” 1 Story Eq. sec. 158. “ Inadequacy of price,” say the court, in Wright v. Strand, 2 Brock. C. C. 311, “ may be so great as to be evidence of fraud proper to be submitted to a jury.” And though it would not in itself under the English law afford a ground for avoiding a sale, yet it would raise a strong presumption against it and would come under the denunciation of their courts of' equity, as demonstrative of some gross imposition, as inequitable and uneonscientious — and under the more severe denunciation of the-civil law (where, it is said, the very elements of the doctrine of equity upon, this subject may be seen), as in violation of the law of nature,., which obliges us to take no advantage of the necessities of the sellee-(1 Story Eq. sec. 247); and wherever lands are the subject, annuls the sale where the price given for them is less than half their value. Id.,.
This doctrine is not intended to be asserted as governing the-case before us, but only as indicative of the presumptions which, may be afforded by the terms and contents of the conveyance itself and the-necessity of proof to repel those presumptions.
In Louisiana it has been held that a conveyance whichjgives all the:property of a debtor to a single creditor, who has no preference by. law, is fraudulent both on the part of the debtor and creditor; and' when attacked as fraudulent, it is for the vendee, to- .show, that the; *(242) debtor possessed other property. 2 N. S. 61; 4 Mart. 625. In Saul v. His Creditors, 5 N. S. 620, 621, the court say: “Repeated decisions of this court, founded on the laws of Spain, have settled that a preference cannot be given by a debtor to one of his creditors in what is called tiempo inhábil. That where there exists an inability to pay debts and a cession of property follows soon after, the debtor cannot make any change in the rights of his creditors; that actual is the same as declared insolvency.” “By the Roman law (says Mr. Justice Story), the vendor of property sold had a privilege or right of priority of payment in the nature of a lien on the property for the price of which it was sold, not only against the vendee and his representatives, but against his creditors.” 2 Story Eq. sec. 122. Under the application of these authorities, it would seem that the case of the appellant would not be very materially aided even did it appear-that he was the creditor of his vendor; and we have seen that the laws on which they are based were of force here when the respective rights of the parties accrued.
Mr. Sugdeu, in his treatise on "Vendors (2 Sug. Vend. 9th ed. 74, 75), says that “persons coming in under the purchase by act of law as assignees of a bankrupt are bound by an equitable lien although they had no notice of its existence, * * * and creditors claiming under a conveyance from the purchaser are bound in like manner as assignees, because they stand in the same situation as creditors under a commission.”
This doctrine is examined and questioned by Chief Justice Marshall in Bayley v. Greenleaf, 7 Wheat. 46, 5 U. S. Cond. 229, where the subject of inquiry was how far the vendor’s lien may be asserted against creditors.
“Though its existence is there treated as a well settled right, still (says the chief justice), it is a secret, invisible trust, known only to the vendor and vendee and to those to whom it may be communicated :in fact. To the world the vendee appears to hold the estate divested .of any trust whatever; and credit is given to him in the confidence that the property is his own in equity as well as law. * * * It would seem inconsistent with the principles of equity and with the general spirit of our laws that such a lien should be set up in a court of chancery to the exclusion of bona fide creditors.”
The doctrine here maintained that the vendor’s lien cannot be asserted against a bona-fide creditor without notice, who gave the credit to the vendee “in the confidence that the property was his own in equity as well as law,” would indeed seem to he the more rational doctrine and more in accordance with the spirit of natural equity which *(243) pervades our system of laws, than that laid down by Mr. Sugden, that bona fide creditors are bound by such equitable lien although they had no notice of its existence.
But to entitle the plaintiff to the benefit of this milder and more reasonable rule he must have been a bona fide creditor; that is, he must have given credit to the vendee without notice of the lien and in the confidence that the property belonged to his debtor in equity as well as law. It does not, however, appear that he had given any credit to his vendor or that the latter had at any time been his debtor. Pie cannot, then, claim the protection of the rule which forbids a secret trust to be setup against a bona fide creditor. But if he purchased with notice of the prior equity, he falls under the denunciation of being jpartieeps eriminis with his fraudulent grantor. He cannot be permitted to shelter himself under his mere legal title' and there set at defiance the equitable claims of others; but his own title will be postponed and made subservient to theirs. It would be gross injustice to allow him to defeat the just rights of others by his own iniquitous bargain. Story Eq. 422.
The question submitted to the jury under the issue was as to the fraudulent intent of the appellant in procuring his title. That intent was a question of fact, and peculiarly within the province of the jury. 1 Stark. Ev. 462, 475. Of the weight of evidence they are the judges. The law, it has been said, has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact. Its business is to define, to distinguish and to apply legal consequences to ascertain facts; but whether a fact be probable or improbable, true or false, admits of no legal definition. The law therefore refers the %oeiglvt of evidence and of the different degrees of probability to the jury, who are to be guided in their decision by their conscientious judgment and belief under all the circumstances of the case. Stark. Ev. 474, 475. And where the question is one of fact to be ascertained by the jury, from weighing the evidence and the degree of probability, the court will not interpose for the purpose of granting a new trial unless it be in order to remedy some manifest error. “ Where a controversy consists chiefly of questions of fact, the objections to a verdict must be very cogent to induce the court to grant a new. trial.” U. S. v. Duval, Gil. D. C. 389. In such a case it is not enough that it is not clear that the verdict is right; but it must clearly appear that it is wrong, to induce the court to set aside the verdict. For, as was said in Baudin v. Rauliff, 1 Mart. (N. S.) 178, where as in this case, the issue was fraud, “on such an issue a jury are emphatically more competent *(244) than this tribunal to arrive at the truth.” And in Gregg v. The Lessee of Sayre, 8 Pet. 244, “ where matters alleged to be fraudulent are investigated in a court of law, it is the province of a jury to find the facts and determine their character.”
In the case before us, the appellant can be in no better condition here than he would have occupied on a motion for a new trial in the court below; and indeed, that court may have possessed means of judging of the correctness of the verdict which we cannot; for (as has been remarked by Chief Justice Marshall) evidence which the court has heard may make an impression not always to be communicated by a statement of that evidence.
Neither courts of law nor equity, says Mr. Justice Story, insist upon positive and express proofs of fraud; but each deduces them from circumstances affording strong presumptions. "We think the circumstances adduced in evidence in the case before us afford strong presumptions against the plaintiff’s title, and unexplained by him, warranted the verdict of the jury.
We see no reason to be dissatisfied with the verdict; and are therefore of opinion that the judgment of the district court be affirmed.