## CONSUMERS' LIGNITE CO. v. BOCCANERO.

(Court of Civil Appeals of Texas. Feb. 4, 1911. Rehearing Denied March 4, 1911.)

1. MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—EVIDENCE—SUFFICIENCY.

In an action for injuries to a coal miner, evidence *held* not to justify a verdict for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

2. APPEAL AND ERROR (§ 1003*)—VERDICT—CONCLUSIVENESS.

The court on appeal will not ordinarily disturb a verdict, but when the evidence for the successful party is contradictory, and the verdict is clearly wrong, it will be set aside.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

Appeal from District Court, Wood County; R. W. Simpson, Judge.

Action by Victor Boccanero against the Consumers' Lignite Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Harry P. Lawther, for appellant. W. P. Gibbs and Jones & Jones, for appellee.

BOOKHOUT, J. Appellee filed this suit for $2,000 against appellant in the district court of Wood county in July, 1908, setting up that on the 15th day of May, 1907, while in the employment of appellant, he was assigned the duty of mining lignite coal in slope No. 1 of its mine; that his duties consisted in digging the coal and loading it on small cars; that it was the duty of appellant's agents to place the cars at or near the room where he was required to work; that on the occasion in question they failed to thus place the cars, and he was compelled to go in the entry in quest of a car in which to load the coal he had dug; that, while thus engaged, a large portion of the roof of said entry composed of rock and slate and other hard and heavy substances fell upon him and crushed his leg, cut and bruised him, and dislocated the bones in his knee, the result of his injuries being that since said accident he had not been able to work more than half the time, and he would become a cripple for life. Appellant answered with a general demurrer, general denial, assumed risk, assumed risk of a known danger, contributory negligence, and negligence of fellow servants. A trial resulted in a verdict and judgment in favor of plaintiff in the sum of $1,000. Defendant's motion for new trial having been overruled, it prosecutes an appeal.

Error is assigned that the trial court erred in refusing to set aside the verdict and grant appellant a new trial. This assignment must be sustained. The appellee, Victor Boccanero, began work for appellant as a miner of coal some time during the month of May, 1907. The coal is mined underground. There is a main entry or hallway extending through the mine in which a railroad is operated for the placing of cars to be filled by the coal as it is mined. Along this main entrance there are rooms opening off and a switch leads off from the main entry, so that cars can be placed in each room to be loaded by the miner working in that room.

Boccanero testified: That on the 14th day of May, 1907, while at work mining coal for appellant at Alba, Tex., a piece of coal from the roof of an entry in the mine fell and struck his left knee while he was in the entry some 200 feet from the room where he mined coal. He swore that at the time he was sitting in a squatting posture in the entry at a parting where he was compelled to go for his car because the driver would not bring it to his room, waiting for an empty car and talking to one Sam Poole.

That he was knocked unconscious. That he was confined to his bed for two days. His knee swelled up as big as his head, and stayed that way for three months. That he was incapacitated for work for a long time, and said injury resulted in great suffering to him, preventing him from working regularly since that time. He went to two doctors, first to Dr. Smith and afterwards to Dr. Pirtle. Sam Poole, to whom he says he was talking when he received the injury, did not testify.

S. D. Landrum, for appellee, testified: "I remember the occurrence of plaintiff having been hurt at the mine. I was in the room below plaintiff on the fourth entry in the mine. I was in room 34, and he was in room 33. I was sitting on my box in the entry and he came out of his room, and the slate, as he came out of his room, I suppose it dropped, and jumped or started to jump out of the way. It fell, and he jumped back as it started to fall and knocked him backwards as he came out of his room. I saw this accident to plaintiff. A piece of slate fell on him. It was not a piece of coal. It was a piece of slate. There was no coal in the roof of the entry. It fell on him as he came out of his room. He was standing up when it fell on him. He was not sitting down." There was no other testimony by parties who actually saw the injury.

Dr. Smith testified to having treated appellee on June 18 or 19, 1907. He says: "Plaintiff came to me to examine his knee, and I found a small boil on his knee. It was the kind commonly known as a blood boil which I found on the plaintiff's knee. There is a difference between a blood boil and a boil arising caused from a bruise in color and appearance. When you have a boil as the result of a bruise or traumatism, the surface will show the effect of the bruise or the effect of the violence; in other words, one will show a surface discoloration or a blue or dark blue color. In other words, what is commonly called a bruise or ecomotic discoloration, or, if it is an ordinary blood boil from infection, the surface will show a red discoloration of the surrounding parts. The boil on plaintiff's knee was a red color, a pink reddish color. I saw no appearance of a bruise at the time I examined him. He made a statement to me with reference to this suit against the defendant company at the time I examined the plaintiff. He had me to examine his knee. He said he thought it was broken, that was his statement. He thought his knee was broken or seriously injured, and he expected to sue the company for remuneration. Plaintiff said he would want me to be a witness for him, would want me to come in the court and swear for him, and he said, if he got a good judgment, he would pay me a good fee. I saw plaintiff once after that time. There was no evidence in the first examination I made of his knee being bruised or injured in any way, only a little boil on his knee, that seemed to have been just an ordinary little blood boil. The next time I saw the plaintiff, after I made the first examination, was something like a month or maybe two months afterwards. He had been to Ginger part of the time. Whether he had been there all the time I don't know. The next time I saw his knee there seemed to be some little inflammatory condition about the joint. The boil about his knee was well at that time. There were no external evidences of injury whatever that I saw at that time."

Dr. Pirtle testified to having treated appellee in June, 1907, at Ginger, Tex. He says: "When I examined plaintiff, he showed to have recently been injured or hurt. He had a punctured wound in his knee, and he suffered from malarial fever and result of the wound. The wound had recently been made. In my judgment the wound had been made with some blunt instrument. I treated plaintiff professionally for about two weeks. I gave him a treatment for malarial fever, also for the infected wound on the knee, which was lacerated and contused. Plaintiff looked to be about 21 years of age. He was a miner. He followed mining as an occupation. I do not know how plaintiff received his wounds and bruises."

The witness Louis Roberts testified: "I am farming now. I have worked for the defendant over here at Hoyt, Tex. I was working there in May and June, 1907, driving a mule in the mine. I know the plaintiff and knew him then, but I had never heard him called Victor Boccanero. We called him 'Ginger,' as he came from Ginger up there. Plaintiff said he got hurt along during that time I was there. He told me he would give me $10 to 'come clean and swear for him'; that he was going to sue the company. He made no statements as to what he was going to sue them about. The talk occurred at the parting in the mine something like 180 or 200 feet from his room, or yard. I don't know just the exact distance it was from his room. It was some distance, though. I was sitting there at the parting, waiting for an empty car."

There was other testimony to the same effect as that of the witness Roberts.

It was shown that Boccanero continued to work for appellant after the time of the alleged injury as a miner, and the defendant introduced testimony tending to show the amount of coal mined by him up to June 17, 1907. This testimony showed that he had mined more coal during that time than is mined by the average miner. Whether the appellee sustained injury while getting out coal in appellant's coal mine, as alleged in his pleadings, and, if so, whether the injuries of which he complains and for which he brings suit resulted from the in-

jury sustained in the mine, were issues necessary to be determined in the affirmative to entitle plaintiff to a recovery.

In view of the testimony on these issues, we do not feel that we would be justified in approving a verdict for appellee in the sum of $1,000. It is true, as argued by appellee's attorneys, that the jury are the judges of the facts and the credibility of the witnesses, and ordinarily we would not feel called upon to disturb their verdict. But when the evidence in behalf of appellee is contradictory, and the verdict appears to be clearly wrong, it becomes our duty to set it aside. Willis v. Lewis, 28 Tex. 186; Long v. Steiger, 8 Tex. 460; Briscoe v. Bronaugh, 1 Tex. 326, 46 Am. Dec. 108.

The judgment is reversed and cause remanded.