## McCARSON et al. v. BULLOCK et al.
### No. 9985.

Court of Civil Appeals of Texas. Galveston.
Oct. 25, 1934.

Rehearing Denied Jan. 31, 1935.

Fred R. Switzer, of Houston (Vinson, Elkins, Sweeton & Weems and S. S. McClendon, Jr., all of Houston, of counsel), for appellants.

Wm. O. Bowers, Jr., of Beaumont (R. S. Bowers, of Caldwell, of counsel), for appellees.

GRAVES, Justice.

The McCarson appellants and appellees jointly owned the 80 acres of potential sulphur land here involved; on March 17, 1928, there were among them three contractual instruments executed to the appellant sulphur company, which are fully described in the trial court's findings herein; upon these three instruments—together with an additional one of August 6, 1930, executed by Booth McCarson alone to the sulphur company and affecting the same property—this suit was based, wherein the appellee McCarson sought of and obtained judgment therefor against all the appellants three-fourths of the contractual returns to Booth McCarson from the sulphur company according to the terms of the last-mentioned instrument of August 6, 1930, together with the impressing of a trust upon such returns, upon the basic theory that the recovery so decreed represented the delayed and unpaid part of the consideration due the appellees for their interest in the land they had so conveyed on March 17, 1928.

The able trial judge, in rendering the judgment, filed conclusions of fact and law, the material portions of which are as follows:

"Findings of Fact and Conclusions of Law.

"* * * III. On March 17, 1928, W. E. McCarson, Ophelia Bullock and Booth McCarson were the only ones of said McCarsons who still owned any mineral interest in and to said 80 acres of land.

"IV. On or about March 17, 1928, W. E. McCarson and wife, Ruth McCarson, Ophelia Bullock and husband, John H. Bullock, Booth McCarson and wife, Fay McCarson, Mrs. Georgia McCarson, a widow, Guy McCarson and wife, Norma McCarson, Garland McCarson and wife, Zada McCarson, Burley McCarson and wife, Minnie McCarson, and Loyce McCarson, a feme sole, mutually agreed that they would jointly sell their undivided interests, surface and mineral, in and to said 80 acres of land to The Union Sulphur Company for a consideration of $200,000.00 in cash and $100,000.00 to be paid on the basis of $1.00 per ton for each ton of sulphur mined and produced as and when produced by Union Sulphur Co. or its assigns from said land with payments to be made on or before the 15th day of each month for sulphur mined during the preceding calendar month, reserving to W. E. McCarson two cents per long ton and to Opelia Bullock one cent per long ton on all sulphur produced from said 80 acres of land, and reserving to Booth McCar-

son all minerals in and under an undivided two and one-half acre interest in and to said 80 acres of land to be leased by him to The Union Sulphur Company providing for royalty on sulphur of $1.00 per long ton on all sulphur produced by said company from said 80 acres of land amounting to 3⅛ cents per long ton for his undivided 1/32 interest, which royalty to him was in addition to the obligation of the Union Sulphur Company to pay $1.00 per ton on sulphur mined until the delayed consideration of $100,000.00 above mentioned had been paid, it being agreed that the owners of surface rights in and to said 80 acres of land would receive $500.00 per acre or a total of $40,000.00 for such surface rights, and that the balance of such cash consideration of $160,000.00 and such delayed consideration of $100,000.00 were to be received and delivered when and as paid by The Union Sulphur Company one-fourth to Ophelia Bullock, one-half to W. E. McCarson, and one-fourth to Booth McCarson.

"Such verbal understanding and agreement was then known by The Union Sulphur Company, as well as the fact that Booth McCarson was authorized by all of said owners to conclude negotiations with The Union Sulphur Company. W. E. McCarson gave such authority to Booth McCarson by letter, and Mrs. Georgia McCarson, and Ophelia Bullock and husband, John H. Bullock, gave him a power of attorney written by himself. The Union Sulphur Company concluded such negotiations through its agents, Dr. T. M. Neal, a friend of the McCarson family, and Mr. J. B. Taylor and its officers, Mr. S. W. Maxwell and W. R. Keever, and its attorney, Mr. C. R. Liskow.

"V. The Union Sulphur Company agreed to purchase the undivided interests of the McCarsons in and to the said 80 acres of land for the consideration and upon the terms aforesaid, and its attorney, Mr. C. R. Liskow, prepared for the conclusion thereof three instruments and conveyances in writing dated March 17, 1928, which were executed by the said McCarsons, and full copies of which are attached to the statement of facts.

"(1) A conveyance executed by Georgia McCarson and all of the McCarson children, including the plaintiffs herein and the defendant Booth McCarson, dated March 17, 1928, recorded in Vol. 80, page 205, of the Deed Records of Wharton County, Texas, by which all of the grantors conveyed to The Union Sulphur Company all of their interests in the 80 acres of land subject to certain reservations and exceptions.

"The said instrument, among other things, recited as consideration 'the price and sum of ten dollars and other valuable consideration in hand paid by The Union Sulphur Company', and also

" 'This sale, transfer and conveyance is made subject to the following exceptions, reservations and conditions:

" '(1) The said Booth McCarson reserves and excepts from this sale and conveyance all his right, title and interest in and to an undivided 2½ acres interest in said property, together with all of the minerals thereon and thereunder; this transfer and conveyance including only the surface of his said 2½ undivided acres interest.

" '(2) The said W. E. McCarson reserves unto himself a royalty interest of 2 cents per long ton for all sulphur produced and marketed from said property to be paid to him out of such production from said land under and by virtue of any lease on said property or any operation thereon by The Union Sulphur Company or others.

" '(3) The said Mrs. Ophelia Bullock reserves unto herself a royalty interest of one cent per long ton for all surphur produced and marketed from said property to be paid to her out of such production from said land under and by virtue of any present or future lease on said property or any operations thereon by The Union Sulphur Company or others.

" 'It is understood and agreed that this transfer and conveyance, subject to the reservations above mentioned, is intended to convey unto The Union Sulphur Company all rights of the grantors in and to said property owned by them by purchase or by inheritance or otherwise.'

"(2) A mineral lease from Booth McCarson and wife, Fay McCarson, to The Union Sulphur Company, dated March 17, 1928, recorded in Vol. 80, page 202, of the Deed Records of Wharton County, Texas, whereby they leased and let to The Union Sulphur Company all their undivided interest in and to the 80 acres of land for the purpose of mining and operating for oil, gas and sulphur and other minerals, in which lease royalty of $1.00 per ton on all sulphur marketed from said land, on the basis of his undivided interest therein amounting to one/thirty-second of $1.00 per ton payable to him, payable monthly, was provided, said lease also providing:

" 'If said leasor owns a less interest in the above described land than the entire undivided fee simple estate therein then the royal-

ties, bonuses and rentals herein provided shall be paid the lessor only in the proportion which lessor's interest bears to the whole and undivided fee.'

"The said lease provided for a term of one year from its date and as long thereafter as oil, gas or sulphur, or either, be produced, and containing other provisions as shown by the copy thereof attached to the statement of facts.

"(3) A supplemental contract or agreement between Booth McCarson and The Union Sulphur Company dated March 17, 1928, recorded in Vol. 80, page 219, of the Deed Records of Wharton County, Texas, by which The Union Sulphur Company agreed to pay to Booth McCarson $1.00 per ton for each ton of sulphur that might be produced by it under and by virtue of said lease until there had been paid the sum of $100,000.00, after which no payments thereof were to be made except for the royalties provided for in said lease contract, a copy of said supplemental contract being attached to the statement of facts.

"The three instruments so dated March 17, 1928, constituted one transaction between all of the McCarsons of the one part and The Union Sulphur Company of the other part. The plaintiffs W. E. McCarson and Ophelia Bullock and husband, John H. Bullock, were induced to sign the one conveyance of the three that they did sign upon the promise of one-half and one-fourth, respectively, of the delayed consideration of $100,000.00 provided in the supplemental contract between Booth McCarson and The Union Sulphur Company. Booth McCarson was not to receive $44,000.00 in cash of the $200,000.00 cash consideration and the $100,000.00 delayed consideration as his portion of the entire $300,000.00 consideration. These facts were then known to The Union Sulphur Company.

"VI. It was agreed by all parties to such instruments on or about the time of the execution thereof that Booth McCarson should receive the considerations from The Union Sulphur Company, and distribute the same among the grantors or persons entitled thereto in the proportions above set forth.

"Accordingly Booth McCarson received from The Union Sulphur Company the cash consideration of $200,000.00. He paid therefrom to Ophelia Bullock $45,000.00, the agreed consideration she was entitled to receive. He paid to W. E. McCarson $73,000.00 of the $85,000.00 agreed consideration he was entitled to receive, the difference he paid to Guy McCarson, Loyce McCarson, Garland McCarson and himself, the said Booth Mc-

Carson and J. B. Taylor, agent of The Union Sulphur Company, asserting they were entitled thereto as an interest in the share of Roy McCarson, deceased, in and to 80 acres of land. The balance of the said $200,000.00 he paid to himself, and to the other McCarsons as the agreed consideration for their surface rights in and to said 80 acres of land.

"VII. The Union Sulphur Company began the production of sulphur from the 80 acres of land in the fall of 1928 and produced 9172.96 tons of sulphur and paid to Booth McCarson the $1.00 per ton on each ton so produced, amounting to $9,172.96, more than two years before this suit was instituted.

"Out of the money so paid by The Union Sulphur Company to Booth McCarson he paid to Ophelia Bullock $853.05 and to W. E. McCarson $1,402.20.

"The amounts of said money unpaid by Booth McCarson to Ophelia Bullock, to-wit, $1,440.04, and to W. E. McCarson, to-wit, $3,184.43, due them as their respective shares of one-fourth and one-half of the $100,000.00, delayed consideration.

"VIII. In February or March, 1929, Ophelia Bullock notified Mr. Jim Taylor, local agent of The Union Sulphur Company at Wharton, Texas, that Booth McCarson was not paying her the one-fourth of the $1.00 per ton of sulphur on the $100,000.00 delayed consideration provided under the supplemental contract of March 17, 1928, and requested that The Union Sulphur Company make her a separate paper therefor and pay the money direct to her.

"Shortly thereafter Ophelia Bullock notified The Union Sulphur Company by letter not to pay her portion of the delayed consideration to Booth McCarson, but to pay her direct and requested a separate paper therefor.

"On May 22, 1929, Ophelia Bullock, joined by her husband, John H. Bullock, revoked in writing their power of attorney to Booth McCarson, filed the same for record the same day, recorded in Vol. 86, page 165, of the Deed Records of Wharton County, Texas, and on the same day mailed a copy thereof to The Union Sulphur Company. The said instrument recites the execution by Mrs. Ophelia Bullock, joined by her husband, John H. Bullock, Garland McCarson and Mrs. Georgia McCarson, on or about March 15, 1928, of a power of attorney to Booth McCarson authorizing him to negotiate a lease and transfer to The Union Sulphur Company of all their rights, title and interest in and to said Lot 22, containing 80 acres of land, for a consid-

eration of $200,000.00 as a bonus and etc., and to collect and distribute to the owners their respective portions of said considerations it should be collected in installments, and that said deal was closed with The Union Sulphur Company, and that Booth McCarson has failed and refused to pay them their portion of March and May, 1929, installments, wherefore they revoked such authority of the said Booth McCarson, and 'do hereby give notice to The Union Sulphur Company aforesaid that the said Booth McCarson is no longer their agent to collect said money and hereby forbid said Union Sulphur Company to pay to him the portion of said consideration due to the said Ophelia Bullock.'

"IX. The Union Sulphur Company ignored such notices, and on or about August 6, 1930, without the knowledge or consent of Ophelia Bullock, her husband, John H. Bullock, or W. E. McCarson, entered into a contract with the said Booth McCarson, dated on said August 6, 1930, recorded in Vol. 90, page 637, of the Deed Records of Wharton County, Texas, whereby Booth McCarson conveyed to The Union Sulphur Company all of his right, title and interest in and to all the sulphur in, on and under the said 80 acre tract for a recited consideration of $90,843.00, payable in installments of $9,084.30 a year, the first installment having been paid on the date of the execution of the instrument and one installment payable on the 6th day of August 1931, 1932, 1933, 1934, 1935, 1936, 1937, 1938 and 1939, reserving a 3⅛ cents per long ton on sulphur mined and produced from said 80 acres of land, and reciting therein:

" 'And The Union Sulphur Company, by the acceptance of this contract of sale, and the said Booth McCarson acknowledges that a certain lease dated March 17, 1928, together with a supplement thereto of the same date, by and between the said Booth McCarson and The Union Sulphur Company covering and affecting his interest in the property herein described, will expire and terminate on August 31st, 1930.' A copy of said instrument is attached to the statement of facts.

"At the time of the execution of said conveyance The Union Sulphur Company and Booth McCarson understood that of the $100,-000.00 delayed consideration under the conveyances and contracts of March 17, 1928, there was unpaid the sum of $90,843.00, which sum is the consideration expressed in the conveyance of August 6, 1930. The Union Sulphur Company by the conveyance of Booth McCarson dated August 6, 1930, owned the same surface rights, mineral and sulphur royalties that it owned under and by virtue of the three conveyances and contracts with the McCarsons dated March 17, 1928, with the exception that it was not required to operate for the production of sulphur, and without agreeing to pay anything more than the unpaid balance of the $100,000.00 delayed consideration provided March 17, 1928. Booth McCarson under the contracts of March 17, 1928, would receive royalty on sulphur produced on said 80 acres of land by The Union Sulphur Company, whereas under the contract of August 6, 1930, he would receive the same royalty on sulphur produced on said land by The Union Sulphur Company and all others producing sulphur on said 80 acres of land.

"The contract and conveyance of August 6, 1930, between Booth McCarson and The Union Sulphur Company was in fact an extension of the contract dated March 17, 1928, in so far as the delayed consideration of $100,000.00 and the interests of W. E. McCarson and Ophelia Bullock thereto are concerned.

"X. In December, 1930, W. E. McCarson went to the office of The Union Sulphur Company at Sulphur, Louisiana, and notified The Union Sulphur Company that Booth McCarson was not paying him his portion of the delayed consideration provided in the contracts of March 17, 1928; that he was not satisfied with the contract of August 6, 1930, and requested papers so that The Union Sulphur Company would pay each one his individual part thereof. The Union Sulphur Company advised him that Booth McCarson would pay him his money if given time, and ignored such requests of. W. E. McCarson.

"XI. At the time of the execution of said conveyance and contract between Booth McCarson and The Union Sulphur Company on August 6, 1930, The Union Sulphur Company paid to Booth McCarson the initial installment of $9,084.30, and on or about August 6, 1931, paid him the second installment of $9,084.30. The said Booth McCarson has paid no part of either of said sums to either W. E. McCarson or Ophelia Bullock.

"XII. On or about October 19, 1931, Booth McCarson being desirous of borrowing money from the defendant City Bank & Trust Company of Houston, executed and delivered to the City Bank & Trust Company as security for the payment of his note agreed to be executed for the sum of $9,084.30 an assignment and conveyance to the City Bank & Trust Company of the installment due August 6, 1932, for the sum of $9,084.30 under the

conveyance from Booth McCarson to The Union Sulphur Company dated August 6, 1930, which assignment was filed for record October 28, 1931, and duly recorded in Vol. 95, page 66, of the Deed Records of Wharton County, Texas, and a copy thereof is attached to the statement of facts.

"Under date of November 13, 1931, Booth McCarson executed and delivered to the City Bank & Trust Company his note of that date due August 6, 1932, for $9,084.30, payable to the City Bank & Trust Company of Houston, and the City Bank & Trust Company on said date paid to the said Booth McCarson and for his account the sum of $9,084.30 less interest thereon from November 13, 1931, to August 6, 1932.

"At the time of the acceptance of said note and paying out the said funds by the said City Bank & Trust Company and the acceptance of said assignment it had a copy of the contract dated August 6, 1930, between Booth McCarson and The Union Sulphur Company, and upon taking it up with The Union Sulphur Company was advised that The Union Sulphur Company recognized the contract, knew of no assignment that had been made of such installment due August 6, 1932, and intended to carry out the terms of the contract, having made the cash payment and also the payment due August 6, 1931. The Union Sulphur Company did not advise the City Bank & Trust Company of any interests in said installment adverse to Booth McCarson, the City Bank & Trust Company made no inquiry of the records of Wharton County as to the title except to obtain a certificate of an abstract company in Wharton as to the records since the execution of the contract of August 6, 1930, but no records prior thereto.

"XIII. Not earlier than March or later than May 1929, The Union Sulphur Company began a consideration of whether or not it would cease operations to produce sulphur or the production of sulphur on the McCarson 80 acres, and from that time until August, 1929, produced very little sulphur from the McCarson 80 acres, and during the month of August, 1929, ceased all operations for the production of sulphur and after August, 1929, has not produced nor made any effort to produce any sulphur therefrom. No well has been drilled by The Union Sulphur Company on the McCarson 80 acres since August, 1929.

"XIV. At no time after March 17, 1928, was The Union Sulphur Company prevented by inability on its part to obtain access to the property with water or other things necessary for the production of sulphur and was not otherwise prevented from the production of sulphur by causes beyond its control.

"XV. If there were ever any legal proceedings which prevented or tended to prevent The Union Sulphur Company from producing sulphur from said 80 acres of land all of said legal proceedings terminated favorable to The Union Sulphur Company on or before July 1, 1929, and that after said date there were no legal proceedings which prevented or tended to interfere with The Union Sulphur Company's production of sulphur from said 80 acre tract.

## "Conclusions of Law.

"I. The plaintiffs, Ophelia Bullock and W. E. McCarson, under the above facts, are entitled as a matter of law and equity to recover of the defendants, The Union Sulphur Company and Booth McCarson, as and for purchase money for their interest in and to the 80 acres of land conveyed on March 17, 1928, to The Union Sulphur Company, such amounts of the delayed consideration provided in the supplemental contract therefor dated March 17, 1928, and the extension contract therefor dated August 6, 1930, by and between the said Booth McCarson and The Union Sulphur Company, which are past due and unpaid to them and which are not barred by the statute of limitations as hereinafter specified.

"The supplemental contract of March 17, 1928, providing for the delayed consideration of $100,000.00 between Booth McCarson and The Union Sulphur Company, and the rights, titles and interests therein described, are and should be impressed under principles of equity with a lien in favor of the plaintiffs, Ophelia Bullock and W. E. McCarson, for the payment to them of the unpaid portions of the consideration for their conveyance of March 17, 1928, to The Union Sulphur Company of their rights, titles and interests therein described. And the contract of August 6, 1930, providing for the payment of $90,943.00, the then unpaid balance of the $100,000.00 delayed consideration, between Booth McCarson and The Union Sulphur Company, being but an extension of the said contract of March 17, 1928, thereby agreed to be cancelled as of August 31, 1930, and made without the knowledge or consent of the plaintiffs, or either of them, whose rights therein were known to the defendants, Booth McCarson and The Union Sulphur Company, and the rights, titles and interests therein described, likewise are and should be impressed under the principles of equity with a lien in favor of the plaintiffs, Ophelia Bullock and

W. E. McCarson, for the payment to them of the unpaid portions of the consideration for their conveyance of March 17, 1928, to The Union Sulphur Company of their rights, titles and interests in and to said 80 acres of land therein described.

"II. The plaintiffs, Ophelia Bullock and W. E. McCarson, are not entitled to recover, because barred by the statute of limitations, such amounts of their unpaid consideration which have been due and unpaid to them for more than two years before the institution of their suit herein, such amounts so barred being $1,440.04 due Ophelia Bullock and $3,184.43 due W. E. McCarson, the unpaid balance of their respective shares of the sum of $9,172.96 of such delayed consideration paid by The Union Sulphur Company to the said Booth McCarson under the supplemental contract of March 17, 1928, between the said Booth McCarson and The Union Sulphur Company.

"III. The plaintiffs, Ophelia Bullock and W. E. McCarson, are entitled in the application of 'remedial justice' of courts of equity to the establishment of a constructive trust in the defendant Booth McCarson for the one-fourth interest in favor of Ophelia Bullock and the one-half interest in favor of W. E. McCarson in and to the extension contract dated August 6, 1930, by and between the defendants, Booth McCarson and The Union Sulphur Company, and the amount of the consideration payments therein provided, $18,168.60 of which has been paid by The Union Sulphur Company to Booth McCarson, and $9,084.30 of which has been assigned by Booth McCarson to the defendant City Bank & Trust Company of Houston, Texas, and seven installments of $9,084.30 each to be paid by The Union Sulphur Company on or before August 6, 1933, 1934, 1935, 1936, 1937, 1938 and 1939 under said contract.

"IV. The City Bank & Trust Company of Houston, Texas, is entitled as an innocent assignee and purchaser for value to the annual installment of $9,084.30 payable on or before August 6, 1932, under said contract of August 6, 1930, assigned by the defendant Booth McCarson to said City Bank & Trust Company by transfer dated October 19, 1931, recorded in Vol. 95, page 66, Deed Records of Wharton County, Texas.

"V. The defendant The Union Sulphur Company for and on account of having paid under the said contract of August 6, 1930, to Booth McCarson the said sums aggregating $18,168.60 and liable to pay to the City Bank & Trust Company of Houston, Texas, by reason of the assignment to it of the install-ment sum of $9,084.30 due on August 6, 1932, by the said Booth McCarson to the sole and only benefit of the said Booth McCarson in disregard of the rights and interests of plaintiffs, Ophelia Bullock and W. E. McCarson, therein, is in equity entitled to reimbursement out of the one-fourth interest and share of the defendant Booth McCarson in and to the remaining seven annual installments for $9,084.30 each to be paid by The Union Sulphur Company on or before August 6, 1933, 1934, 1935, 1936, 1937, 1938 and 1939 under said contract of August 6, 1930, in the event the said Booth McCarson shall not pay and The Union Sulphur Company shall pay or cause to be paid to the plaintiffs, Ophelia Bullock and W. E. McCarson, or either of them, their one-fourth and one-half portions or shares, respectively, in and to the said amounts of $18,168.60 and $9,084.30 which the said Booth McCarson has not heretofore paid to them, aggregating $20,439.67, the sum of $6,813.22 thereof due Ophelia Bullock and the sum of $13,628.45 thereof due W. E. McCarson. * * *"

Additional findings of fact made at the request of the defendants, Booth McCarson, Fay McCarson, and the Union Sulphur Company:

"No. 1. I find that Ophelia Bullock and W. E. McCarson and neither of them prior to March 17, 1928, owned or claimed any interest in the minerals underlying the 2½ acres described in the lease contract from Booth McCarson to The Union Sulphur Company dated March 17, 1928, and recorded in Vol. 80, page 202, of the deed records of Wharton County, Texas.

"The above is found as additional finding of fact and is ordered filed and made a part of the record in this cause.

"Dated March 8, 1933.

"No. 2. I find that at the time Ophelia Bullock and W. E. McCarson signed the conveyance dated March 17, 1928, recorded in Vol. 80, page 205, deed records of Wharton County, Texas, they did so with the knowledge and understanding that Booth McCarson was giving to The Union Sulphur Company a mineral lease on his undivided 2½ acres and was not giving a conveyance of the fee to the minerals under the said 2½ acres.

"The above is found as additional finding of fact and is ordered filed and made a part of the record in this cause.

"March 8, 1933.

"No. 3. I find since August, 1929, no one claiming under the lease from Fay McCarson and Booth McCarson to The Union Sulphur

Company dated March 17, 1928, has produced or made any effort to produce any sulphur from the 80 acre tract described therein.

"The above is found as additional finding of fact and is ordered filed and made a part of the record in this cause.

"Dated March 8, 1933.

"M. S. Munson, Judge of the District Court of Wharton County, 23rd Judicial District of Texas."

Appellants' request for a further and supplemental fact finding to No. XIII as to whether or not, in so ceasing operations and the production of sulphur from the land in August of 1929, it did that "with the intention of abandoning and did abandon the production of sulphur from said land" was refused. Preliminarily to attacking many of the findings actually made, the declination to find this additional one was assigned as reversible error, but it is not thought to be so, because, in the first place, the court appears to have made findings upon all the issues as to which there was dispute in the testimony, the clear implication from what was found on this feature—as reflected in stated finding No. XIII and others—being that no such intention to abandon was either entertained or carried out, and the undisputed proof in that connection showing that the company never did either give up the property or remove its equipment therefrom.

As concerns the findings of both kinds that were made, notwithstanding the earnest contention of appellants' able counsel to the contrary, after an examination of the statement of facts and a consideration of the arguments and authorities submitted, this court is unable to say that these determinations below either lack support in the evidence or fail to square with well-settled rules of law governing the facts so found.

Since the quoted and approved findings and conclusions of the trial court comprehend the theory and basis upon which this court's affirmance of the action there taken is grounded, no further extended opinion seems necessary; however, the lines along which there is divergence in the view here taken from the presentments of appellant may well be generally marked out: In the first place, as at the outset recited, and as its conclusions of law make manifest, the trial court proceeded upon the basic theory that the three instruments between all the parties of March 17, 1928, were construable as constituting one transaction between all the McCarson litigants, whereby the appellees under the deed of that date conveyed their interests in the land to appellant for the total consideration of $300,000, to be paid $200,000 cash, and the remaining $100,000 in the manner and under the terms detailed in the other two instruments of that date running in the name of Booth McCarson alone, but made and subsequently acted under by all the McCarsons, with the knowledge and acquiescence of the appellant, for the benefit of all the appellees— that is, all three instruments were made for the single and joint consideration of $300,000 inuring to the benefit of all the McCarsons, of which $100,000 was the delayed part payable to them all in the proportions agreed upon between them—in the manner specified in the second of the three joint instruments that so ran in the name of Booth McCarson alone— acting, however, for himself and all the others; thus appellant errs ab initio in undertaking to separate these three instruments one from the other and make of the latter two independent transactions between the sulphur company and Booth McCarson alone, in which the appellees were not concerned.

If such separation might properly be effected and it could be further shown that—acting in good faith toward the appellees—it both ceased the production of sulphur, in the manner found below, in August of 1929, and finally gave up or abandoned the land for sulphur-producing purposes, then it might be, perhaps, a permissible deduction that those events determined the appellees' rights and left the benefits of the August 6, 1930, contract, of which the appellees knew nothing whatever until long after its execution, to inure to Booth McCarson alone; but, as the trial court so clearly shows, the acts of the appellants, Booth McCarson and the sulphur company, in and of themselves clearly repel any such implications; in this connection the appellees in their trial petition, after first reciting that all parties recognized the $100,000 of delayed consideration as belonging to the appellees in the proportions claimed by them in the way they acted under the three instruments of March 17, 1928, then added this averment concerning the execution of the subsequent contract between Booth McCarson and the sulphur company alone of August 6, 1930:

"Thereafter, to-wit, on or about August 6, 1930, without notice to or consent of the plaintiffs, the defendants Booth McCarson and Union Sulphur Company, acting in collusion and in utter disregard of the rights of the plaintiffs, altered, amended and changed the delayed consideration aforesaid, and the manner and method of the payment thereof, as

aforesaid, by their certain instrument in writing dated on the day and year last aforesaid, recorded in Volume 90, page 637, Deed Records of Wharton County, Texas, here referred to and made a part hereof for all purposes, wherein it is recited that Nine Thousand Eighty Four and 30/100 ($9,084.30) Dollars had been paid by defendant Union Sulphur Company to the defendant Booth McCarson, the receipt whereof he thereby acknowledged, and provided for further payments of the sum of Nine Thousand Eighty Four and 30/100 ($9,084.30) Dollars on or before August 6, 1931, 1932, 1933, 1934, 1935, 1936, 1937, 1938 and 1939, so that after such payments have been made a total cash consideration of Ninety Thousand Eight Hundred Forty Three ($90,843.00) Dollars will have been made. The defendant Union Sulphur Company well knew of the rights, titles and interests of the plaintiffs in and to the delayed consideration recited in the supplemental lease agreement of March 17, 1928, by and between it and the said defendant Booth McCarson, and notwithstanding notice of the revocation of the agency of the said defendant Booth McCarson by the plaintiffs wholly failed to obtain consent of the plaintiffs to the change, amendment and alteration thereof, and has unlawfully acted in disregard of the rights of plaintiffs."

█Appellants' second major contention on the appeal directly relates to this feature of the cause and is to the effect that the trial court found against it no such fraud as the appellees thus alleged; it is true the court below made no specific recitation by that name that fraud was committed, but it did find all the facts underlying these several detailed transactions under specifications of the terms of the instruments themselves, and, in the opinion of this court, the truth of appellees' averment was thereby clearly imported; for instance, as mentioned supra, the uncontroverted evidence—even the testimony of appellant's agents themselves—showed that it never at any time gave up the land as sulphur-bearing property, but held on to it all the while, and, on August 6, 1930, without the knowledge or consent of the appellees, undertook to shift or transfer the interests it had theretofore recognized as being in the appellees to the remaining unpaid balance of the originally deferred consideration of $100,000 to Booth McCarson alone, therein and thereby recognizing the land to be payingly productive of sulphur by unconditionally agreeing to pay him exclusively the ninety-odd thousand dollars then remaining unpaid of the original $100,000 of deferred consideration,

the new deal with him enabling it to hold the property for that purpose for ten years longer and still without obligation on its part to ever produce any sulphur therefrom; no explanation for this course appears to this court in the record, as it did not to the trial court, wherefore the findings there made and principles of equity so ably applied to them are deemed here to reflect the justice of the cause.

These further and more specific answers to different ones of the propositions may be appended:

█ (1) It was competent for the appellees to show the real consideration for the deed of March 17, 1928, whereby they conveyed their several interests to appellant by parol evidence. Rule 24, vol. 11, p. 97, article 3713, Vernon's Ann. Civ. St. 1925; Wells v. Timms (Tex. Civ. App.) 275 S. W. 468, 470; 22 Corpus Juris 1253, 1254; Southwestern v. Smith (Tex. Civ. App.) 48 S.W.(2d) 456.

█ (2) A lien in equity accrued to them as security for the payment of the stipulated sales price for their interests. Briscoe v. Bronaugh, 1 Tex. 326, 330, 46 Am. Dec. 108; Hooser v. Forbes (Tex. Civ. App.) 33 S.W.(2d) 550.

█ (3) The appellees, as vendors, were entitled as against the sulphur company, as the purchaser of their interests in the land, to both a personal judgment and a foreclosure of the equitable lien for the unpaid purchase price; the two remedies being concurrent and cumulative, the one in personam against the purchaser and the other in rem against the land to subject it to such payment; especially did these two rights accrue, since the judgment further awarded the sulphur company a like recovery in its own behalf over against the appellant Booth McCarson. Holt v. Holt, 59 S.W.(2d) 324, 327.

█ (4) Under the original three instruments of 1928, appellant, by the express terms thereof, entered upon the land with the obligation to attempt the production of sulphur therefrom; by the simplest principles of equity it was accordingly bound to exercise good faith toward the appellees in that undertaking to the full extent of their three-fourths interest in the $100,000 delayed consideration—not only so, but as recited supra, it also (together with the other appellants) so construed its tenure and so divided for a time the proceeds of the sulphur from the land— wherefore, any subsequent manipulation or metamorphosis, without the appellees' knowledge or consent, whereby it was undertaken

to pay the whole of the remainder of that same single and joint consideration to Booth McCarson alone, would be in plain fraud of the appellees' rights. Bristoe v. Bronaugh, supra; Clark v. Haney, 62 Tex. 511, 514, 50 Am. Rep. 536; Faville v. Robinson, 111 Tex. 48, 227 S. W. 938; Cook v. Leslie (Tex. Civ. App.) 59 S.W.(2d) 302, 303; American Sulphur v. Freeport Sulphur (Tex. Civ. App.) 276 S. W. 448; Id., 117 Tex. 439, 6 S.W.(2d) 1039, 60 A. L. R. 890.

Under the conclusion upon the cause as a whole that the learned trial court correctly determined the issues presented, its judgment has been affirmed.

Affirmed.